[Crim. No. 21069. Second Dist., Div. Four. June 20, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL GOMEZ, Defendant and Appellant.

## COUNSEL

Thomas N. Thomson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, S. Clark Moore and Norman H. Sokolow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DUNN, J.—After a nonjury trial, defendant was convicted of unlawful sexual intercourse with a female under the age of 18, a felony, in violation of Penal Code section 261.5. His two codefendants were found not guilty. Proceedings were suspended and defendant was ordered placed on probation for two years under various conditions. Defendant appeals from the judgment (order granting probation, Pen. Code, § 1237), purporting also to appeal from an order denying his motion for new trial.

Appellant's contentions all relate to a ruling of the trial court admitting into evidence the transcript of testimony given at the preliminary hearing by the complaining witness. Appellant first contends the trial court erred in finding the witness was "unavailable."

There is no doubt the accused in a criminal case has a constitutional, as well as statutory, right to confront witnesses against him. (U.S. Const., 6th Amend.; Pen. Code, § 686, subd. 3.) The testimony of a witness given against the accused on an earlier occasion may, however, be read into evidence when it is established that such witness is "unavailable." (Evid. Code, § 1291, subd. (a)(2).)[1] Here, in establishing unavailability,

---

[1]Evidence Code section 1291 states in part: "(a) Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: . . . (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and

the People relied on Evidence Code section 240, subdivision (a)(3), reading in pertinent part: "(a) . . . 'unavailable as a witness' means that the declarant is: . . . (3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity."

That statute requires no showing of reasonable diligence to produce the witness when the witness's illness or infirmity is the cause of the absence. To require proof of reasonable attempts to secure the attendance of a witness who, in any event, could not come to court even if subpenaed, would be an asinine bow to futility. For that reason, cases cited by the parties laying down the requirements for establishing "reasonable diligence" are inapropos.

In a separate hearing held to determine the admissibility of the testimony (Evid. Code, § 400 et seq.), the prosecution produced the evidence briefly summarized hereafter. This evidence showed that the crime occurred on May 10, 1971. The complaining witness had become 15 years old just 8 days before, on May 2, 1971. On June 4, 1971, she was admitted to Camarillo State Hospital. Two medical doctors, staff psychiatrists, testified at the court hearing which was held July 28, 1971, to determine the girl's availability. Counsel stipulated to the doctors' qualifications. Dr. Martin was personally in charge of the girl's care and treatment. He testified that she was very vulnerable to stress; she had a tendency to psychomotor seizures which were difficult to diagnose and treat; she had shown significant improvement although such was rather "delicate and tedious"; in his opinion there was a "strong possibility" that it would be detrimental to her welfare to appear in court. While under his care at the hospital, she had "become rather hysterical with minimal provocation." He concluded she could become "very vulnerable and regressing backwards and wipe out the improvement that she's shown . . . and . . . as her physician, I don't want to risk that happening."

Dr. Rieger testified that it is his job to decide whether a child should be admitted to the hospital. He reviews all girls' records as part of his procedure. Having reviewed this child's records, it was his opinion that coming to court and testifying "is a very traumatic experience to a child" such as this one. He concluded she would be "definitely affected" by it and he "would strongly recommend against it"; he was "greatly concerned that it would grossly affect the child's present and possibly future health, mental health . . . . I would be very concerned over the consequences which might ensue from her appearing here under such stress or conditions."

---

opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

After hearing witnesses called by the defendants, the court found that "the witness . . . is unable by reason of physical and mental illness or infirmity" to come to court and testify. He admitted into evidence her testimony given at the preliminary hearing.

Appellant concedes that the Sixth Amendment right "to be confronted with the witnesses against him," made applicable to states by the Fourteenth Amendment (*Pointer* v. *Texas* (1965) 380 U.S. 400, 403-406 [13 L.Ed.2d 923, 926-928, 85 S.Ct. 1065]; *Douglas* v. *Alabama* (1965) 380 U.S. 415, 418 [13 L.Ed.2d 934, 937, 85 S.Ct. 1074]) is a qualified right and that the testimony of a witness given at a preliminary hearing and subject to appropriate cross-examination may be admitted where it is shown that the witness is, in the language of *California* v. *Green* (1970) 399 U.S. 149, 165 [26 L.Ed.2d 489, 501, 90 S.Ct. 1930], "actually unavailable, despite good-faith efforts of the State to produce him." (And see: *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].) Appellant contends, however, that in determining "unavailability" there is a federal constitutional impediment to the application of state law and that federal cases have not gone as far as does our statute, contending that federal courts determining unavailability have gone only so far as to deal with deceased witnesses or those beyond reach of the trial court's process. (See, e.g.: *Motes* v. *United States* (1900) 178 U.S. 458 [44 L.Ed. 1150, 20 S.Ct. 993]; *Murray* v. *Louisiana* (1896) 163 U.S. 101 [41 L.Ed. 87, 16 S.Ct. 990]; *Mattox* v. *United States* (1895) 156 U.S. 237 [39 L.Ed. 409, 15 S.Ct. 337]; *Reynolds* v. *United States* (1879) 98 U.S. 145 [25 L.Ed. 244].) We need not determine whether doctrines advanced under federal Constitution provisions govern the admissibility of such evidence in state courts, for we believe that federal cases recognize the existence of a broader ground of unavailability. For example, in *California* v. *Green, supra,* the court states (p. 166 of 399 U.S. [p. 501 of 26 L.Ed.2d]): "If Porter had died or *was otherwise unavailable,* the Confrontation Clause would not have been violated . . . ." (Italics added.)

We find no such limitation on the rule of unavailability as, according to appellant, was imposed by English common law. (See Annotations in 15 A.L.R. 495; 79 A.L.R. 1392; 122 A.L.R. 425; 159 A.L.R. 1240.) To require proof that a witness's unavailability is permanent would be, except in case of death, to require speculation. Thus, the witness beyond the reach of process (*People* v. *Nieto* (1968) 268 Cal.App.2d 231 [73 Cal.Rptr. 844]) ultimately might return, and the witness avoiding a subpena or otherwise unlocatable (*People* v. *Rodriguez* (1971) 18 Cal.App.3d 793 [96 Cal.Rptr. 162]; *People* v. *Rinegold* (1970) 13 Cal.App.3d 711 [92 Cal.Rptr. 12]; *People* v. *Peters* (1969) 276 Cal.App.2d 71 [80 Cal.Rptr.

648]) may be located. In like fashion, the witness presently unavailable because of disabling illness or infirmity ultimately may recover; but if the fact or time of recovery lies only in an uncertain or distant future, no good reason appears for denying the admission of testimony previously given. In recognition of this, Evidence Code section 240, subdivision 3, refers to unavailability "to testify *at the hearing* because of *then existing . . .* illness or infirmity." (Italics added.) Such a showing of unavailability seems to have been recognized in California even before adoption of the Evidence Code.[2]

■ We agree with appellant that the illness or infirmity must be of comparative severity; it must exist to such a degree as to render the witness's attendance, or his testifying, relatively impossible and not merely inconvenient. However, we cannot say just what illness or infirmity must be shown or the degree of its severity, leaving that determination to a trial court's exercise of discretion.

The witness was thoroughly cross-examined at the preliminary hearing by the attorneys for appellant and his codefendants. Appellant does not contend that the opportunity to cross-examine, required under the confrontation clause, was not met.

■ The court heard the medical testimony and concluded the complaining witness was unavailable. No abuse of discretion appears in the record. (*People* v. *King* (1969) 269 Cal.App.2d 40, 46-47 [74 Cal.Rptr. 679]; *People* v. *Hernandez* (1968) 263 Cal.App.2d 242, 250-252 [69 Cal. Rptr. 448].) Appellant relies upon two cases each quite distinguishable. Thus, in neither *People* v. *Bojorquez* (1880) 55 Cal. 463 nor in *People* v. *Rinesmith* (1940) 40 Cal.App.2d 786 [105 P.2d 1021] was any expert medical testimony introduced; only testimony of police officers was offered to show the nature and extent of the illness of the absent witness. This was held to be legally insufficient. (See: *Sanchez* v. *Bagues & Sons Mortuaries* (1969) 271 Cal.App.2d 188, 193-194 [76 Cal.Rptr. 372].)

■ As a second contention, appellant argues that the presence of a complaining witness in court is essential if the prosecution is to sustain a conviction under Penal Code section 261.5. The appellant testified that the complaining witness did not tell him her age and that it did not appear to him that she was under the age of 18. While he cites no authority for the contention that a prosecutrix must be personally present, he refers to

---

[2]*People* v. *Spriggs* (1964) 60 Cal.2d 868, 875 [36 Cal.Rptr. 841, 389 P.2d 377]: "If Mrs. Roland was deceased, insane, suffering from severe illness, absent from the jurisdiction, or otherwise unavailable as a witness, such unavailability provided a necessity for the evidence, thus affording a basis for its admissibility . . . ."

*People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] wherein it was held that a defendant's good faith belief that a prosecutrix was over 18 years of age may constitute a valid defense against a charge of statutory rape.

The trial judge stated he would personally observe the girl before finally deciding the case, and it was stipulated that he could do so. "I will look at her before this case ends. . . . I think I probably ought to see her out at the hospital in a situation where she cannot observe me . . . I will watch her at play, whatever she is doing, eating, whatever she is doing in her daily activities . . . . I simply intend to look at her face, build and general features, that is all I can look at." The court did go to the hospital and look at the girl before determining the guilt or innocence of appellant and his codefendants.

We are not aware of any such requirement as appellant urges. In any event, the trial judge observed the complaining witness, as well as reviewing her testimony given at the preliminary hearing wherein she stated she had told appellant she was only 15. We find no error.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied July 7, 1972, and appellant's petition for a hearing by the Supreme Court was denied August 16, 1972.