**STATE of Iowa, Appellant,**

v.

**Charles Garland ANDREWS, Jr., Appellee.**

No. 88–1082.

Supreme Court of Iowa.

Oct. 18, 1989.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Paul Martin, County Atty., for appellant.

Raymond E. Rogers, State Appellate Defender, and Peter Persaud, Asst. State Public Defender, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

The State has charged defendant Charles Andrews with two counts of lascivious acts with a child in violation of Iowa Code section 709.8(1) and (2) (1987). An earlier trial on these same charges resulted in a hung jury and declaration of mistrial. The case before us concerns pretrial rulings in connection with Andrews' retrial.

The trial court has declared the child victim incompetent to testify, and the court has also refused to allow the State to offer a videotape of the child's prior trial testimony into evidence. We granted the State's application for discretionary review of these pretrial rulings. Finding no abuse of the trial court's broad discretion in such matters, we affirm.

I. Defendant Andrews was charged with lascivious acts after his four-year-old neighbor, Debbie, told a social worker that Andrews had invited her into his apartment where he touched her vagina and prompted her to hold his penis until he "went potty" on her. The defendant challenged Debbie's competence to testify at trial and a hearing on that question was held. Judge Ralph McCartney, who presided at the hearing and conducted much of the questioning, found her competent. His ruling elaborated on his finding as follows:

> Debbie is clearly a non-verbal child, not particularly loquacious. And it could be, of course, the surroundings in which she finds herself.
>
> She was able to distinguish on some questions what was the truth and what

was a lie; i.e., colors, number of fingers held up by the Court, the color of the walls, I believe.

> And I was somewhat more ill at ease with her commitment to tell the truth.
>
> But taking the thing by the four corners, including [the social worker's] testimony and my own observation of the little girl, I am reasonably satisfied that she would tell things in a generally truthful way.

The State also filed a motion for closed-circuit televised testimony pursuant to Iowa Code section 910A.14(1) in order to permit Debbie to testify outside the presence of the defendant. The court granted the motion based on Debbie's "tender years," the courtroom's "strange surroundings," and the court's unwillingness "to have her in the courtroom with 13 jurors, 2 bailiffs and the Defendant present." The trial proceeded in accordance with the judge's rulings. The jury was unable to reach a unanimous verdict and a mistrial was declared.

A new trial was scheduled sixty days later before Judge Paul W. Riffel. Andrews renewed his objection to Debbie's competency. A second competency hearing was held which included the testimony of Debbie, her mother, Kenneth Zimmerman (the social worker who had first interviewed Debbie), and a psychiatrist called by the defense, Dr. William Erickson.

Following this second competency hearing, Judge Riffel found that Debbie lacked the competency to be a witness, ruling as follows:

> The child has shown an inability to formulate intelligent answers or communicate impressions and recollections regarding the incidents at issue. She was unresponsive to simple, straightforward questions put to her during her interview with Zimmerman, at trial and at the competency hearing. The questions to which she has responded have generally been forced choice questions—did he do this or did he do that. She did not verbalize any independent recollection or details surrounding the alleged incidents.

In view of the court's ruling, the State moved to have Debbie's prior videotaped trial testimony admitted as evidence pursuant to Iowa Rule of Evidence 804(b). The court denied the motion on two grounds: (1) that the child was not "unavailable" as a witness for purposes of rule 804, and (2) that in the absence of a particularized finding of need, use of the videotape violated the defendant's right of confrontation under *Coy v. Iowa*, 487 U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

II. The State charges the trial court with having abused its discretion with regard to these determinations of witness competency and admissibility of evidence. First, it cites error in the court's reconsideration of a witness's competency once a finding of competency has been made; second, it challenges the merits of the court's competency decision; and, third, it attacks the court's refusal to admit the child's videotaped trial testimony under rule 804.

Our review of such rulings is strictly circumscribed. We will not reverse unless it is demonstrated that the court's broad discretion has been abused; that is, that the ruling is clearly untenable and without reason. *State v. Brotherton*, 384 N.W.2d 375, 377 (Iowa 1986); *Calvert v. State*, 310 N.W.2d 185, 187 (Iowa 1981); *State v. Buck*, 275 N.W.2d 194, 195 (Iowa 1979). With this standard in mind, we consider the issues on review.

A. *Reconsideration.* The State argues that a competency determination, once made, should not be subject to modification absent proof of a change in circumstances requiring re-examination of the witness. Such a rule, the State argues, is needed in order to strengthen the presumption of competency of child witnesses and thereby reduce unnecessary trauma suffered by child victims. By way of resistance, the defendant argues that the State has not only failed to preserve error on this issue, it has cited no authority for its proposition.

The defendant has a strong argument on the preservation question. The record clearly suggests that the county attorney conceded, rather than resisted, the defense request that Debbie's competency be reassessed prior to the second trial. Although the prosecutor's show of cooperation creates a technical obstacle for the State on appeal, we think his response was consistent with the letter and spirit of Iowa Rule of Evidence 601.

■ The rule calls for intervention by the court "[i]f the child's competency is questioned." Iowa R.Evid. 601. No temporal limitation on the court's action appears. Though a witness's change in status from competent to incompetent (or the reverse) may be rare during the course of a trial, such change in status is certainly conceivable. Absent a showing of abuse, we see no reason to limit the court's authority to make necessary competency determinations whenever and as often as may be required by the particular circumstances of a case.

Here, Debbie's competency has been a source of ongoing concern for counsel and the court. The transcripts and videotapes submitted with this appeal reveal court and counsels' great difficulty engaging the child in any meaningful dialogue, even at a child's level of communication. We find nothing unreasonable about the trial court's decision to reassess Debbie's present capacity to testify competently by holding a second hearing at defendant's request. The assignment of error is without merit.

B. *Competency.*

The competency of a person to testify is governed generally by Iowa Rule of Evidence 601. The rule was amended, effective July 1, 1985, to provide that "a child ... is presumed to be competent." Iowa R.Evid. 601. If the child's competency is questioned, then the rule requires the court to determine whether

(1) the child is mentally capable of understanding the questions being asked;

(2) the child is able to formulate intelligent answers and communicate impressions and recollections regarding the incident about which the child is to testify; and

(3) the child can understand the responsibility to tell the truth.

*Id.* This three-part test does not materially differ from the traditional measure of a witness's competency: "(1) the mental capacity to understand the nature of the questions put and to form and communicate intelligent answers thereto and (2) the moral responsibility to speak the truth, which is the nature and obligation of an oath." *State v. Harvey,* 242 N.W.2d 330, 336 (Iowa 1976). We have previously applied this standard to child victims of sexual abuse. *See Brotherton,* 384 N.W.2d at 377.

■ In arguing for reversal of the trial court's ruling, the State asserts that the court held her to an adult standard of competency instead of recognizing and accommodating the developmental limitations associated with childhood. The State's argument advances the view held by many child abuse experts that "[a]ge differences in perceptual, memory, and verbal capacities should be taken into consideration in assessing witness competence" Berliner & Barbieri, *The Testimony of the Child Victim of Sexual Assault,* 40 J.Soc.Iss. 125, 129 (1984). The question is whether the trial court erroneously disregarded the importance of the age factor here. We think not.

Contrary to the State's assertion, the record in this case reveals repeated attempts by everyone involved in these proceedings—social workers, prosecutors, defense counsel, judges—to relate to Debbie on a four-year-old level. They were largely unsuccessful. As the trial court noted at the first competency hearing, Debbie simply is not a talkative child, even compared with other children her own age. As the case progressed, Debbie's reluctance to communicate became even more pronounced. Whether the questions put to her were concrete and grounded in her experience (How many fingers am I holding up? What color is my shirt?) or clearly too abstract for even most adult minds (Can you give me an example of what the truth is?), Debbie's response became quite predictable: no response.

The State contends that the court should determine a child's competency solely by "whether the child can distinguish truth from lies and whether the child is capable of communicating that knowledge." This proposed standard does not differ markedly from the one articulated in *Brotherton,* 384 N.W.2d at 377. An essential component is missing, however: the requirement that a child be able to demonstrate a "moral responsibility" to tell the truth. It is this prong of the competency test about which Judge McCartney was uneasy and upon which Judge Riffel disallowed Debbie's testimony. We find considerable evidence in the record to support their concern.

At the competency hearing before Judge Riffel, Debbie was allowed to sit on her mother's lap. She would not verbally answer whether she would tell the truth; instead, she nodded ambiguously in response to the prosecutor's many inquiries. When cross-examined by defense counsel, Debbie refused to respond at all, eventually turning away and burying her head in her mother's shoulder. Later, Debbie's mother testified that she could generally tell when Debbie was lying because she would be "reluctant to look [her] straight in the eye" and would "kind of put her head down."

The State's own witness, social worker Ken Zimmerman, conceded on cross-examination that Debbie was "likely to give people things that are not necessarily the truth." Child psychiatrist William Erickson testified without objection that, in general, four-year-olds feel no moral obligation to speak the truth. Based on his review of Debbie's videotaped testimony and initial investigatory interview, he stated that it was impossible to determine whether or not she was capable of telling the truth because she had "just shut down."

Given this record, we cannot ascribe the State's difficulty in establishing Debbie's competency to some unreasonable standard of adult perception and recollection imposed upon her by the trial court. Under rule 601, competency is measured by four essential capacities—to understand, to recollect, to communicate, and to be truthful. We can infer from the rule that these skills, when required of a child, are to be

measured in accordance with a child's level of perception and intelligence. We are not persuaded that the trial court failed to do so here.

We deplore the fact that crimes of violence and abuse are perpetrated upon children too young to even speak out about them in court. We recognize that accommodation must be made to enable children to testify with as much accuracy as a child can muster, without demanding more. Yet precisely because these crimes are so repugnant—and our hearts go out so easily to their young victims—we must insure that the fact finder is weighing testimony that meets a minimum threshold of competency. We cannot say that the trial court abused its discretion in deciding that competency was lacking here.

C. *Prior testimony.*

Iowa Rule of Evidence 804 provides exceptions to the hearsay rule by allowing the admission of prior statements when the declarant is unavailable as a witness. Because the court disqualified Debbie as a witness based on her incompetency, the State argued that her videotaped testimony from the first trial should be admitted as evidence in the second trial under the "former testimony" exception:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former testimony.* Testimony given as a witness at another trial or hearing of the same or a different proceeding, ... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Iowa R.Evid. 804(b)(1).

The court concluded that rule 804(b)(1) did not apply because Debbie was not "unavailable" as defined by rule 804(a). Moreover, the court held that the admission of the videotape, recorded outside the defendant's presence, would violate the defendant's sixth amendment confrontation right.

Rule 804 provides, in pertinent part, that

'[u]navailability as a witness' includes situations in which the declarant—

> . . . .
>
> (4) is unable to be present or to testify at the trial or hearing because of death or then existing physical or mental illness or infirmity.

Iowa R.Evid. 804(a)(4).

■ Other jurisdictions have uniformly held that an incompetent child witness is "unavailabile" for the purposes of rule 804. *See Haggins v. Warden,* 715 F.2d 1050, 1055 (6th Cir.1983); *Lancaster v. People,* 615 P.2d 720, 723 (Colo.1980); *State v. Bellotti,* 383 N.W.2d 308, 314 (Minn.App.1986); *State v. Bounds,* 71 Or.App. 744, 749 n. 1, 694 P.2d 566, 568 n. 1 (1985); *State v. Doe,* 105 Wash.2d 889, 894–96, 719 P.2d 554, 557 (1986); *see also* J. Meyers and N. Perry, *Child Witness Law and Practice,* § 5.27 at 313 (1987 & 1989 Supp.). We agree with the rationale put forth by the Washington Supreme Court in support of this interpretation:

> While the concepts of availability and competency do not overlap entirely, it is quite clear that an incompetent child is not available. The term 'available' denotes a witness who can be confronted and cross-examined. A child unable to take the stand obviously cannot respond to opposing counsel's questions.

*Doe,* 719 P.2d at 557 (citation omitted).

In support of a more restrictive view of the term "unavailability," the defendant relies on a cryptic footnote found in *State v. Brown,* 341 N.W.2d 10, 13 n. 1 (Iowa 1983). There the court observed that "the non-testifying child did not meet the definition of 'unavailable.'" *See id.* As noted by the State, it is unclear from the *Brown* opinion whether the statement was a fact-specific finding or a general interpretation of rule 804(a). Moreover, our decision in the case turned on the applicability of the "residual or catchall" hearsay exception of rule 804(b)(5), an analysis that *presumes* a threshold determination of unavailability. Given the uncertainty surrounding the dicta in *Brown,* and the great weight of authority supporting a contrary view, we do not find *Brown* controlling on the question.

Even assuming that Debbie meets the definition of unavailability under rule 804, however, the admissibility of her former testimony in a criminal proceeding must still be scrutinized under the sixth amendment's confrontation clause. The clause operates to restrict the range of admissible hearsay in criminal cases in two ways: first, by burdening the State with a "rule of necessity" requiring proof of the declarant's unavailability and, second, by requiring that the out-of-court statement be cloaked with indicia of reliability. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607 (1980). Reliability can be inferred "without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608.

Recently the Court drew an important distinction between the "implicit" hearsay-based exceptions to the confrontation clause described in *Ohio v. Roberts* and the "explicit" right of face-to-face confrontation guaranteed by the sixth amendment. *Coy v. Iowa*, 487 U.S. ——, ——, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 864 (1988). Exceptions to the latter—if they exist at all—would be allowed "only when necessary to further an important public policy." *Id.* at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. Taking the lead from Justice O'Connor's concurring opinion in *Coy*, this court has since recognized that reasonable protection of child witnesses in sex abuse cases furthers just such an "important public policy" and will be upheld when there is a case-specific finding of necessity. *State v. Hoversten*, 437 N.W.2d 240, 242 (Iowa 1989); *In Interest of J.D.S.*, 436 N.W.2d 342, 345 (Iowa 1989).

■ In the present case, the trial court found that the State was unable to overcome either the "unavailability" test or the "case-specific finding of necessity" requirement prompted by the *Coy* decision. While we think the court erred with respect to its narrow interpretation of "unavailability" under rule 804(a), the error does not benefit the State in light of the court's correct analysis of the *Coy* obstacle to the admission of Debbie's prior testimony.

As previously noted in this opinion, Debbie's original trial testimony was video-taped outside the defendant's presence in accordance with Judge McCartney's general unwillingness to expose her to the "strange surroundings" of the courtroom. This concern, while commendable, does not address the question of whether the child *needed* the protection. *See Hoversten*, 437 N.W.2d at 242 (need for protection demonstrated where child victim of "horrendous and painful" abuse is under treatment for posttraumatic stress syndrome); *J.D.S.*, 436 N.W.2d at 346–47 (court found, based on expert testimony, that child would be "traumatized" by confrontation with defendant.)

Judge Riffel concluded that no special need for protection was demonstrated under this record. We cannot disagree with his conclusion. In support of the need for a shield, the State had argued that Debbie "shut down" when questioned in the presence of the defendant. But as aptly noted by Judge Riffel, Debbie was equally unresponsive to questioning when the defendant and jury were confined to other rooms.

In stark contrast to the potential for psychological harm demonstrated in *Hoversten* and *J.D.S.*, the record before us contains no evidence from which such inference could be drawn. The child's mother, for example, testified that the child had expressed no fear of the defendant. Dr. Erickson dispelled the notion that fear was prompting Debbie's silence by his testimony that this child was likely to be unresponsive in the presence of *any* adult. The alleged incident of abuse revealed no evidence of physical injury from which some emotional trauma could be inferred.

Given this record, it appears reasonable to us that the court was "not convinced that the child's failure to respond to questions is attributable to a fear of the defendant." Because the State did not prove the need for protection under *Coy, Hoversten*, and *J.D.S.*, the court correctly ruled that the admissibility of Debbie's prior testimony—even if otherwise allowable under rule 804—would violate Andrews' sixth amend-

ment right of confrontation. No abuse of the trial court's broad discretion in the admissibility of evidence has been shown. Accordingly, we affirm the ruling of the district court and remand the case for further proceedings.

AFFIRMED AND REMANDED.