STATE of Iowa, Appellee,

v.

Melvin Shane GREGG, Appellant.

No. 89–1851.

Supreme Court of Iowa.

Dec. 19, 1990.

As Corrected Dec. 26, 1990.

Linda Del Gallo, State Appellate Defender, and Brian K. Sissel, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., Thomas S. Mullin, Co. Atty., and Carol J. Chase and Jeffrey A. Neary, Asst. Co. Attys., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

We granted discretionary review to consider a challenge to a pretrial ruling which would allow introduction of the victim's deposition at trial in substitution for his live testimony. The case requires us to accommodate the conflicting demands of two important rights. They are the fundamental right of an accused criminal defendant to a fair trial and the right of a child sex abuse victim to protection from any unnecessary rigors of the trial process. We reverse and remand.

Defendant Melvin Shane Gregg was originally charged with two counts of second-degree sexual abuse. Iowa Code §§ 709.1 and 709.3 (1987). The alleged victim was defendant's seven-year-old son.

At defendant's request depositions were arranged for both the victim and his mother. Neither appeared; the prosecutor reported he was unable to locate them, precipitating a motion by defendant to strike their testimony.

After the district court ordered the witnesses produced the State moved, pursuant to Iowa rule of criminal procedure 12(2)(b), that the child be deposed with defendant in a separate room or behind a screen so that the child would not have to experience a face-to-face confrontation with the defendant.

Following hearing it was so ordered. The deposition of the child took place with defendant in an adjacent room, having at his convenience a telephone so he could communicate with his attorney. The deposition was understood to be for discovery; no party intimated it was to be used in lieu of trial testimony.

Two days after the deposition the State moved to dismiss the trial information in the interests of justice. It is apparent that the State was prompted to dismiss because the child was not then prepared to testify. The State later filed a second trial information against the defendant, charging him

with three counts of second-degree sexual abuse and an additional count of lascivious acts with a child. The first two counts realleged the initial two which had been dismissed.

On the basis of a phone call from the child's mother to the prosecutor, defendant again moved to strike the son as a witness. The mother was quoted as saying neither she nor the child would testify at trial. The affidavit attached to the motion also quoted the prosecutor as stating that, because neither the mother nor son would testify, charges were to be dismissed.

The trial court granted defendant's motion and struck the son as a witness. The court noted that the State had indicated it had no factual basis upon which to resist the motion. The State thereafter moved to reconsider and, after hearing, the child was reinstated as a witness.

Another ruling regarding the child's testimony, entered by the court a week later, is the subject of this appeal. The court held that the child was unavailable to testify at trial under Iowa rule of evidence 804(a)(4) due to the witness's "then existing physical or mental illness or infirmity," and that the child's earlier deposition would be admissible under Iowa rule of evidence 804(b)(1).[1] In addition the trial court held that, because there was a case-specific finding that the screening device at the deposition was necessary, and that the defendant thoroughly cross-examined the boy at the deposition, the use of the deposition at trial did not violate the defendant's constitutional right to confrontation.

We granted defendant's application for discretionary review to consider his challenge to the order.

■ I. Because Gregg's sixth amendment rights of confrontation are implicated our review of the trial court's findings is de novo. *State v. Rademacher*, 433 N.W.2d 754, 759 (Iowa 1988) ("[I]n regard to legal conclusions which carry serious constitutional implications, we must make our own evaluation of the totality of the circum-

stances under which the rulings on constitutional rights were made."). The State suggests that a different scope of review, *i.e.*, abuse of discretion, was introduced in our opinion in *State v. Andrews*, 447 N.W.2d 118, 120 (Iowa 1989). We however did not intend any such change by our *Andrews* holding.

Other jurisdictions have adopted an abuse of discretion standard in reviewing cases involving a sixth amendment right of confrontation. *See, e.g., State v. Burns*, 332 N.W.2d 757, 759 (Wis.1983); *La Barge v. State*, 246 N.W.2d 794, 799 (Wis.1976); *State v. La Fernier*, 171 N.W.2d 408, 411 (Wis.1969).

We are not so persuaded. We note and approve the following: "While the right [to confrontation] is not absolute, its denial or significant diminution calls into question the integrity of the fact-finding process and requires that the competing interests be closely examined." 23 C.J.S. *Criminal Law* § 1115, at 407 (1989) (citing *Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 606 (1980)).

Our scope of review is de novo.

II. There is authority for the State's contention that, in extreme cases, a deposition can be later used at trial when a witness becomes psychologically unavailable. Several jurisdictions have recognized such a theory. *See People v. Gomez*, 26 Cal. App.3d 225, 230, 103 Cal.Rptr. 80, 83–84 (1972); *People v. Lombardi*, 39 App.Div.2d 700, 701, 332 N.Y.S.2d 749, 750–51 (1972), *aff'd*, 33 N.Y.2d 658, 348 N.Y.S.2d 980, 303 N.E.2d 705 (1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Warren v. United States*, 436 A.2d 821, 829–30 (D.C.1981); *State v. Kuone*, 243 Kan. 218, 757 P.2d 289, 295–96 (1988); *State v. Twist*, 528 A.2d 1250, 1256–57 (Me. 1987).

These authorities make it clear that those jurisdictions which subscribe to the theory apply it with some reluctance, and only in rare circumstances. In *People v. Gomez* the court held that "psychological

---

1. Iowa rule of evidence 804(b)(1) permits the use of former testimony, including depositions, at a later trial where the declarant is "unavailable as a witness."

unavailability must exist to such a degree as to render the witness' attendance, or his testifying, relatively impossible and not merely inconvenient." *Gomez*, 26 Cal. App.3d at 230, 103 Cal.Rptr. at 83–84.

In *Lombardi* the court upheld a finding that the witness's health would be endangered if forced to testify again. *Lombardi*, 39 App.Div.2d at 701, 332 N.Y.S.2d at 750–51. The court noted that the witness's mental and physical health most likely would be seriously jeopardized and result in a "further and perhaps successful attempt at suicide." *Id.* The witnesses in both *Lombardi* and *Gomez* were rape victims.

In *Warren* the trial judge excused a rape victim from testifying because the experts agreed that she "would undergo far greater mental anguish than normally accompanies court appearances of the victims of rape and that her appearance in court ... would be likely to lead to severe psychosis, even possible suicide." *Warren*, 436 A.2d at 828. The record in *Warren* was replete with evidence that the witness had suffered severe depression which had reached suicidal levels. *Id.* The trial court's decision in *Warren* was supported by an independent psychiatric evaluation of the witness. This independent witness concurred with the opinion of the State's expert witnesses. *Id.* at 829.

In discussing the psychological unavailability issue the *Warren* court stated:

> We do not intend to sanction a new category of medical unavailability in all cases where witnesses are likely to suffer adverse emotional or psychological effects as a result of testifying against their assailants. But in the extreme circumstances presented here, we agree that the grave risks to the witness' psychological health justify excusing her live in-court testimony. The expert testimony relating to Reed's mental health established that there was both a high likelihood of temporary psychological injury, perhaps even psychosis, and a possibility of permanent psychological injury. We are also persuaded of the correctness of

the trial court's ruling because of the expert's agreement on the comparative severity of the victim's probable reaction to testifying again.

*Id.* at 829–30.

■ III. The facts here make this an inappropriate case to decide whether to adopt a "psychologically unavailable" justification for substituting a deposition for trial testimony. On our de novo review we find the facts fall far short of calling for application of such a doctrine.

The trial court held that the child became traumatized when undergoing extensive preparation prior to the initial trial date, scheduled in August 1989. The trial court noted the mother's indignation over the possibility that the child would have to prepare again for trial. The court found merit in the opinion of psychologist Dr. Schmitz who stated that the child should not be allowed to testify because of potential emotional harm.

Without doubt the child is uncomfortable when testifying in front of his father. It may well be that, upon further showing, the child should be allowed to testify (as he did at the deposition) in a room other than the courtroom, under an arrangement authorized by Iowa Code section 910A.14(1) (1989) and Iowa rule of criminal procedure 12(2)(b).

The screening procedure employed for the child's deposition was ordered on the basis of testimony of two witnesses: Dr. Schmitz and the child's mother. It easily established that, in October 1988 the child would be greatly disturbed if compelled to testify in front of his father.

This record nevertheless simply will not support substituting the deposition for live testimony. At the hearing a year later, regarding the use of the deposition in lieu of trial testimony, the State offered testimony of Dr. Schmitz, social worker Dean Williams, the child's mother, and others.

The social worker stated that he evaluated the child on August 18, 1989. When asked if the child was ready for trial, he stated:

He was extremely fearful, I think, or verbalized to me that he was extremely fearful of the whole process, not really knowing or understanding what would be occurring. He was also extremely scared that people in the courtroom would not believe him. They would think he was lying. And he expressed some fear of facing the defendant in court.

In response to the county attorney's question regarding the child's ability to testify, he stated:

*I felt that he was ready to come into court and testify.* And I felt clinically that it was extremely important that he do so to bring closure to the whole issue for himself. He was just as scared at the end as he was the beginning of our conversation, but I believe *he had a better understanding of what would be occurring and indicated a willingness to testify in court.*

(Emphasis added.) This testimony apparently caught the State by surprise. The defendant relies strongly on it in support of Gregg's argument that the child should not be deemed "psychologically unavailable."

In its ruling that the child should be deemed "psychologically unavailable" the trial court appeared to rely heavily on the testimony of Dr. Schmitz. Dr. Schmitz testified at the later hearing that he had not seen the child since the summer of 1988, but stated unequivocally: "[i]t would not be my recommendation that he could handle court." His opinion was necessarily based on his evaluations in the summer of 1988. He concluded the child was "fragile, ... emotionally disturbed, ... disassociative, ... [has] reading and spelling deficits, ... [is] unstable, ... [often] regresses into a fetal position" when confronted with discussing the alleged sexual encounters. All of these characteristics, Dr. Schmitz says, are related to sexual abuse. These observations, however, were completed almost a year and one-half prior to the hearing on the determination of "unavailability" and approximately two and one-half years prior to this appeal.

Dr. Schmitz was asked at the hearing whether he had any *present* evaluation of the child's emotional condition. He responded: "I have contacted his mother yesterday and his teacher this morning." He quoted the teacher as saying the child had many problems and he could not function in group situations. He quoted the child's mother as stating that, as the time for testifying in court approached, the child became more unstable and that he did not want again to prepare to testify in court.

Evidence from the other State witnesses showed only that the child was apprehensive about the court proceedings. One witness conceded that, when the child saw his father, he embraced him and did not appear to be afraid of him.

We conclude that the record does not establish that, at this time, the child is unable to testify at trial. The order of the trial court is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.