Filed 9/18/25  P. v. Ayala CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D086170 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1702125) |
| JUAN ANTONIO AYALA, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Stephen J. Gallon, Judge.  Reversed in part, affirmed in part, and remanded with instructions.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Juan Antonio Ayala, Jr. guilty of six counts of lewd or lascivious acts involving Jane Doe 1 (counts 1-4) and Jane Doe 2 (counts 10 &

11), both children under the age of 14. (Pen. Code, § 288, subd. (a).) As to Jane Doe 1, the jury also found Ayala guilty of three counts of forcible oral copulation (former § 288a(c)(2), now § 287(c)(2); counts 5, 6 & 8) and two counts of forcible sexual penetration (§ 289(a)(1); counts 7 & 9). The court sentenced Ayala to total prison terms of 25 years to life.

Ayala raises four arguments on appeal. First, he contends counts 1 through 9 should be reversed because the trial court erred in admitting the preliminary hearing testimony of Detective Janet Rubien, about statements made to her by Jane Doe 1 in 2005, in violation of his right to due process and to confront and cross-examine witnesses. We conclude the record does not satisfy the People's burden to show Rubien suffered from an existing physical or mental infirmity that made her unavailable to testify and the trial court erred in admitting her preliminary hearing testimony. Because the error was not harmless as to the forcible oral copulation counts, we reverse the convictions on counts 5, 6, and 8.

Second, Ayala argues the admission of uncharged sexual offenses violated his right to due process and a fair trial. We conclude Ayala forfeited this challenge by failing to object below.

Third, Ayala contends the denial of his request to admit his prior consistent statements violated his right to present a defense. We determine the trial court did not abuse its discretion in its ruling on prior consistent statements because the prosecution's skepticism as to Ayala's memory of distant events was a general credibility challenge and the proffered statements were not made before the motive to fabricate testimony arose.

Finally, the People concede Ayala is entitled to presentence credits, and we accept the concession.

We thus reverse the convictions on counts 5, 6, and 8, remand with instructions, and otherwise affirm.

## I.

## A.

Jane Doe 1 is Ayala's half-sister; they share the same father. She was born in June 1990. By the time of trial in November 2023, she was 33 years old.

When she was six, Jane Doe 1 and her family moved from Mexico to California. They settled into an apartment, where Jane Doe 1 lived with her mother, father, and younger brother. About a month later, Ayala— seven years older than Jane Doe 1—joined them. After about five years living in the apartment, Jane Doe 1 and her family moved to a house in Palm Desert. She thought she was ten or eleven at the time of the move.

Starting when she was about six years old, Ayala would touch Jane Doe 1 in her private area. Initially, Ayala touched her on top of her clothing, but eventually he started touching her underneath her clothing. Ayala wiggled his fingers as he touched her at the opening of her vagina. Ayala's fingers went "in between" the "lips" of her vagina. His fingers went "barely inside" her lips, but "did not go inside what" Jane Doe 1 described as "a canal." She considered this "not a penetration." Sometimes Ayala masturbated while touching Jane Doe 1. He touched her more than five times, at least once after she turned 14.

Jane Doe 1 recalled three additional incidents. When she was probably in middle school, Ayala put her hand on his penis. Another time, Ayala laid, clothed, on top of her on the floor and rubbed his body against hers like they were having sex. On another occasion, Ayala touched her vagina and

masturbated. He rubbed his penis against her vagina and ejaculated on her. This happened after Jane Doe 1 turned 14.

Less than a year after the last incident, Jane Doe 1 reported Ayala's conduct to her mother.

In February 2005, Jane Doe 1 met with Detective Rubien from the Riverside County Sheriff's Department and Rebecca Legarreta, a children's services worker.

### B.

Jane Doe 2 is the daughter of Ayala's ex-wife. She was born in December 2010 and was 12 years old at the time of trial. One day when Jane Doe 2 was five or six and sitting in the front passenger seat of Ayala's car, Ayala reached over, put his hand inside her underwear, and was "holding onto" her private area. He kept his hand on her vagina throughout the 30-minute drive. The jury viewed a video of a forensic interview of Jane Doe 2 from 2017, when she was six years old. In the recording, Jane Doe 2 said Ayala put his hand inside her underwear and touched her "pee pee" multiple times during the drive as she was sitting in the front seat of the car with Ayala. He told her, "You can touch me everywhere."

### C.

After a mistrial in April 2023 at which no evidence was taken, trial started in November 2023.

The trial court found Rubien unavailable for trial and allowed the jury to hear her preliminary hearing testimony, detailed below.

Legarreta testified Jane Doe 1 told her Ayala had been touching Jane Doe 1's vagina, breasts, and butt since she was six. It began in Mexico and continued in California until June 2004. Jane Doe 1 said Ayala made her kiss and suck his penis. He licked her vagina and kissed her breasts.

4

Incidents occurred more than 20 times, but Jane Doe 1 did not remember specific occasions. Ayala threatened that if Jane Doe 1 told anyone, he would rape her.

Ayala testified. He denied sexually molesting Jane Doe 1 and Jane Doe 2.

During deliberations, the jury requested, and was provided, the transcripts for the testimony of Rubien and Legarreta. The same day, the jury returned guilty verdicts on counts 1 through 11 and made special findings as to each victim.

## II.

### A.

Ayala contends counts 1 through 9 should be reversed because the trial court violated his due process and confrontation rights by admitting Rubien's preliminary hearing testimony about Jane Doe 1's 2005 statements. We conclude the record lacked substantial evidence Rubien suffered a sufficiently severe physical or mental infirmity, so the trial court erroneously concluded she was unavailable. We further conclude the error was not harmless as to counts 5, 6, and 8—the counts of forcible oral copulation involving Jane Doe 1—since Jane Doe 1 repeatedly denied those acts occurred.

#### 1.

"A criminal defendant has a state and federal constitutional right to confront witnesses, but the right is not absolute." (*People v. Sánchez* (2016) 63 Cal.4th 411, 440.) If a witness is unavailable, the witness's prior testimony may be admitted at trial if the defendant had an opportunity to cross-examine the witness at the prior hearing. (*Ibid.*) A witness is unavailable if the witness is "[d]ead or unable to attend or to testify at the hearing because of then-existing physical or mental illness or infirmity."

5

(Evid. Code, § 240(a)(3).)  The illness or infirmity must render the witness's testimony "relatively impossible and not merely inconvenient."  (*People v. Gomez* (1972) 26 Cal.App.3d 225, 230.)  Evidence that testifying would "inflict[ ] substantial trauma on the witness" would satisfy this standard.  (*People v. Winslow* (2004) 123 Cal.App.4th 464, 472.)  The prosecution must prove unavailability by a preponderance of the evidence.  (*People v. Christensen* (2014) 229 Cal.App.4th 781, 790.)

We review the trial court's factual findings for substantial evidence and independently review whether those facts satisfy the prosecution's burden to show the witness was unavailable.  (*People v. Cromer* (2001) 24 Cal.4th 889, 894, 900-901.)

2.

In 2021, the People issued a trial subpoena to Rubien.  Rubien, who was living in Arkansas, explained in a letter it was "too much" for her to drive to California and she would not fly.  She could not travel far in general, and California was "so out of control" with COVID-19.  Rubien had left California for her mental health and the prospect of testifying caused her anxiety and stress.  She did not mention physical limitations or a medical diagnosis, and she closed her letter by acknowledging, "I know my feelings pale compared to the past and present victims but please consider them."

The People sought to deem Rubien a material witness and compel her attendance with an out-of-state subpoena.  The prosecutor's accompanying declaration asserted Rubien's testimony was "vital" to establish Jane Doe 1's credibility and helpful propensity evidence as to charges involving Jane Doe 2.

At a hearing, a court in Arkansas agreed Rubien was a material witness but, "due to COVID-19, and other health and financial

6

considerations," the court would not require her to travel to California. It ordered Rubien to be available to testify remotely. That order expired in April 2021.

Trial was delayed until March 2023, at which point Rubien voluntarily agreed to appear in Riverside. Rubien did not testify, however, before a mistrial was declared in April 2023.

Retrial commenced in November 2023. Before Jane Doe 1 took the stand, the prosecution indicated it might impeach Jane Doe 1 with Rubien's preliminary hearing testimony. Defense counsel objected that the court had not declared Rubien unavailable.

The prosecution had not moved in limine to admit Rubien's testimony and had not submitted recent evidence of her unavailability. The People referred to the Arkansas proceeding in 2021 and proffered that Rubien recently said her health had deteriorated to such a point she could barely move around her own house, and traveling by plane or car was impossible. The trial court declined to find Rubien unavailable but permitted questions by the parties to Jane Doe 1 about her prior statements to Rubien.

District attorney investigator Rebecca Nelson subsequently spoke to Rubien over the phone for about 10 to 15 minutes. The court overruled Ayala's hearsay objection and permitted Nelson to testify about Rubien's statements at a hearing to determine Rubien's availability.

Nelson testified Rubien was living in Colorado and had "substantial arthritis issues" that would "come and go." Arthritis flare-ups caused significant swelling that made it difficult for Rubien to stand or sit for substantial periods of time. Flare-ups were unpredictable and could be lengthy. Rubien was willing to come to court if she physically could, but she believed the stress of traveling could cause a flare-up. When not suffering a

7

flare-up, Rubien could drive and tend to daily affairs.  Nelson did not know how long Rubien had had arthritis and was unaware Rubien had agreed to travel to Riverside earlier that year.

The prosecutor also provided a November 2023 letter from Rubien's doctor that read: "'Ms. Janet Rubien is currently under the care of UC Health Primary Care Highlands Ranch.  She has some medical conditions and it would be a hindrance for her to travel.'"

Ayala objected because neither Rubien nor the medical expert testified.  He argued Nelson's testimony was hearsay that, with the doctor's note, failed to establish the severity of Rubien's condition.

The trial court found Rubien unavailable and admitted her preliminary hearing testimony.  In reaching this conclusion, the court found Rubien's medical condition worsened between 2021 and 2023.

3.

We conclude the evidence of Rubien's physical condition was insufficient to meet the People's burden of showing she had a "then-existing physical or mental illness or infirmity" rendering her testimony "relatively impossible" rather than "merely inconvenient."  (Evid. Code, § 240(a)(3); *Gomez*, 26 Cal.App.3d at p. 230.)

At best, Nelson's testimony established Rubien believed traveling could cause a "flare-up" of her arthritis symptoms.  While the flare-ups were unpredictable, they were temporary, varied in intensity, and could be managed with pain medication.  We are unconvinced the speculative possibility of uncomfortable physical symptoms suffices to show Rubien had a "then-existing" physical infirmity.  (Evid. Code, § 240(a)(3).)

Beyond the existence of a qualifying condition, the People also had to show the condition made it "relatively impossible" for Rubien to testify.  This

8

determination "generally calls for expert opinion . . . as to the likely effect of the court appearance on the physical or mental health of the witness." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 518.)

The doctor's note failed to establish the severity of Rubien's condition or the consequences to her of testifying, merely describing it as a "hindrance." It did not describe the impact to Rubien from traveling to and testifying in court, much less the likelihood, severity, or duration of any harm. (Contra, e.g., *Gomez*, 26 Cal.App.3d at p. 230 [medical doctors opined testifying would detract from witness's recovery and negatively affect her present and future mental health]; *People v. Macioce* (1987) 197 Cal.App.3d 262, 282 [physician opined there was 70 percent chance testifying would be detrimental to witness]; *People v. Christensen* (2014) 229 Cal.App.4th 781, 795 [medical experts said testifying would "severely traumatize[ ]" witness and cause substantial and long-lasting regression].)

The Arkansas court's sole reference to an unspecified "health . . . consideration[ ]" is not substantial evidence to support the trial court's conclusion Rubien suffered from arthritis symptoms in 2021 that persisted and worsened by November 2023. The contemporaneous evidence in 2021 reflects Rubien was concerned about the *mental* strain of the trial. As to her physical limitations, she said only it was "too much" to drive from Arkansas to California and she would not fly. There is no substantial evidence to support that her unwillingness to travel in 2021 related to a physical infirmity rather than the stress she emphasized in her letter or the COVID-19 pandemic. Indeed, the record contains facts contradicting the court's finding. After writing the letter in March 2021, Rubien moved interstate, and by April 2023, she was willing to travel to Riverside to testify.

9

Even if the trial court were correct Rubien suffered a worsening health condition, we conclude the People failed to show traveling or testifying would inflict "substantial impairment to her mental or physical health—either permanently or for any significant period of time." (*People v. Williams* (1979) 93 Cal.App.3d 40, 54.)  The only medical opinion available showed it would be a "hindrance" for Rubien to travel to Riverside.  And even a witness who is *likely* to suffer "anguish and physical" trauma from testifying—which has not been shown here—is not unavailable if those effects are temporary.  (*Ibid.*)

In short, Rubien was not unavailable under Evidence Code section 240(a)(3), so the trial court erred in permitting her preliminary hearing testimony to be read to the jury.

4.

We apply the harmless error test set out in *Chapman v. California* (1967) 386 U.S. 18, 24 to errors that violate a defendant's Sixth Amendment right to confrontation.  (*Stritzinger*, 34 Cal.3d at p. 520.)  Under *Chapman*, a constitutional error is unprejudicial if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman,* 386 U.S. at p. 24.)  The test is not whether a hypothetical jury would render the same verdict absent the error but whether there is "any reasonable possibility that the error might have contributed to the conviction in this case." (*People v. Lewis* (2006) 139 Cal.App.4th 874, 887.)  In weighing harmlessness, we must determine whether the error was unimportant in relation to everything else the jury considered on the issue in question. (*People v. Song* (2004) 124 Cal.App.4th 973, 984.)

Ayala contends the erroneous admission of Rubien's testimony requires reversal of counts 1 through 9, all the counts involving Jane Doe 1.  The People argue the error was harmless because the jury also heard from Jane

10

Doe 1, Legarreta, and Jane Doe 2 about Ayala's conduct. We find neither argument wholly persuasive.

a.

Over objection, the jury was read Rubien's preliminary hearing testimony.

According to Rubien, Ayala started molesting Jane Doe 1 when she was six years old and living in Mexico. He would take her into his bedroom, pull his pants down, and touch her under her clothing on her breasts and vagina, although he did not penetrate her. The abuse continued after they moved to California. When Jane Doe 1 was between seven and ten years old, Ayala continued to touch her under her clothing and started making her touch his penis with her hand. This happened more than once.

After Jane Doe 1 moved to a house in Palm Desert, Ayala would "penetrate her vagina digitally" and "orally copulate her" on her sister's bed. If Jane Doe 1 did not cooperate, he would slap her face and arms. This happened "[o]ften" before stopping in July 2004.

One time when Jane Doe 1 was 11 or 12, Ayala came into the living room, forced her onto the floor, and tried to kiss her. He took off their clothes and laid on top of her as if they were having sex, with his penis touching her vagina. Ayala "digitally penetrated her vagina" on that occasion. Jane Doe 1 told Ayala, "I'm your sister" and said she was going to tell someone. He responded if she told anyone it would be worse for her. Jane Doe 1 took this to mean Ayala would engage in sexual intercourse with her.

At trial, Jane Doe 1 denied Ayala engaged in the range of conduct she had described to Rubien. Jane Doe 1 did not describe any abuse in Mexico. While Rubien reported and described frequent and ongoing acts of digital penetration and oral copulation, Jane Doe 1 identified five occasions of

11

inappropriate touching without penetration and three specific incidents of abuse without oral copulation.  Jane Doe 1 repeatedly denied vaginal penetration or oral copulation ever occurred.  Jane Doe 1 expressly denied ever telling anyone Ayala licked her vagina, put his mouth on her vagina, or made her kiss and suck his penis.

b.

We conclude the erroneous admission of Rubien's testimony was harmless as to the convictions for sexual penetration and lewd conduct but prejudicial as to forcible oral copulation.  (See *Song,* 124 Cal.App.4th at p. 985 [harmless error requires review of individual counts].)

Jane Doe 1 denied vaginal penetration occurred, but her description of how Ayala touched her at least five times, including during the last incident of sexual abuse in July 2004, supported the jury's finding beyond a reasonable doubt that Ayala's conduct met the legal definition of penetration.  Legarreta's generic testimony that Jane Doe 1 said Ayala touched Jane Doe 1's vagina generally corroborated Jane Doe 1's testimony on these counts.  In addition to the testimony of Jane Doe 1 and Legarreta, the jury was properly permitted to consider under Evidence Code section 1108 Jane Doe 2's testimony that Ayala touched her vagina inside her underwear as propensity evidence for the sexual penetration charges involving Jane Doe 1. (*People v. Dejesus-Galindo* (2025) 113 Cal.App.5th 692, 701 [considering propensity evidence in review of harmlessness].)  Thus, Rubien's testimony was essentially cumulative; it was consistent with the more detailed evidence of sexual penetration provided by Jane Doe 1 and the generic testimony of Legarreta.  (See *People v. Houston* (2005) 130 Cal.App.4th 279, 295.)  We therefore conclude the erroneous admission of Rubien's testimony was harmless as to counts 7 and 9.

For similar reasons, we conclude the error was also harmless as to the counts of lewd and lascivious conduct involving Jane Doe 1 (counts 1-4). Again, the jury was permitted to consider the lewd conduct described by Jane Doe 2 as propensity evidence. That and Jane Doe 1's testimony Ayala made her touch his penis when she was in middle school, rubbed his body on her simulating sex, and touched her vagina with his fingers multiple times prior to age 14 supplied sufficiently overwhelming evidence of lewd and lascivious acts on Jane Doe 1 to convince us the erroneous admission of Rubien's testimony was harmless beyond a reasonable doubt.

We cannot find the error harmless as to the charges of oral copulation, however. Jane Doe 1 repeatedly denied oral sex occurred and did not remember telling investigators it did. Reports of her prior interviews did not refresh Jane Doe 1's recollection; to the contrary, she disclaimed the accuracy of those documents. Legarreta supplied conclusory statements from Jane Doe 1—which Jane Doe 1 denied—about Ayala licking her vagina and making her suck his penis, with no details about specific encounters or a timeframe. Thus, to convict Ayala of oral copulation on Jane Doe 1 in June and July 2004, the jury likely relied on Rubien's testimony about Jane Doe 1's statements. (*Lewis*, 139 Cal.App.4th at p. 887; *Song*, 124 Cal.App.4th at p. 985 [confrontation error not harmless where disputed testimony went to "central issue" of crime].)

We therefore reverse the convictions of counts 5, 6, and 8.

### B.

Ayala claims the trial court violated his rights to due process and a fair trial by admitting uncharged sexual offenses as Evidence Code section 1108 propensity evidence without requiring the People to establish Ayala had the capacity to understand the wrongfulness of the conduct, as required by Penal

13

Code section 26. He further argues the probative value of the evidence was outweighed by prejudice and risk of confusing the jury under Evidence Code section 352. Ayala forfeited this issue by failing to object as to incapacity or prejudice, so we decline to reach the merits.

The People moved prior to trial to admit Ayala's conduct involving Jane Doe 1 while they were living in Mexico–when Ayala was under 14– as Evidence Code section 1108(a) propensity evidence, and to use evidence of sexual abuse by Ayala against each victim as propensity evidence for the charges involving the other victim. After initially objecting to the use of subsequent conduct involving Jane Doe 2 as propensity for the earlier conduct against Jane Doe 1, defense counsel ultimately submitted on the motion. The trial court ruled the evidence was admissible under Evidence Code sections 1108, 1101(b), and 352.

"Penal Code section 26[ ] creates a rebuttable presumption that a child under 14 is incapable of committing a crime." (*People v. Cottone* (2013) 57 Cal.4th 269, 280.) This presumption applies not only to charged offenses, but also when the prosecution offers propensity evidence regarding unadjudicated sexual offenses committed when the defendant was under 14. (*Id.* at p. 281.) The presumption must be overcome before the evidence may be admitted. (*Ibid.*)

Ayala complains the trial court erred by admitting the conduct that occurred in Mexico without requiring the People to make a "foundational showing of capacity." But the trial court made no explicit capacity findings because defense counsel never requested any. (See *Cottone,* 57 Cal.4th at p. 292 ["upon a defendant's timely objection" court must make a capacity finding].) Nor did the defense object to admission of the testimony under section 352. (See *People v. Ervine* (2009) 47 Cal.4th 745, 777 [same as to

14

section 352 objection].)  Ayala has therefore forfeited these issues.  (See Evid. Code, § 353(a).)

C.

Ayala claims the trial court violated his right to present a defense by denying his request to admit his prior consistent statements.  The court, however, did not abuse its discretion in ruling Ayala had not met the conditions for admission of prior consistent statements to rebut a charge of recent fabrication under Evidence Code section 791(b).

1.

During Ayala's cross-examination, the prosecutor repeatedly questioned Ayala's ability to clearly recall events from years earlier.  In response, defense counsel sought to recall investigator Nelson to establish Ayala said many of the same things to Nelson in a 2017 interview as he testified at trial.  Counsel argued Ayala's 2017 statements to Nelson should be admitted as prior consistent statements under section 791 because the prosecutor's cross-examination suggested Ayala recently fabricated his testimony.  The court denied Ayala's request, finding "[in]sufficient questioning or evidence" to permit the admission of Ayala's prior statements.

2.

Evidence Code section 791(b) allows admission of a prior consistent statement if "[a]n express or implied charge has been made that [the witness's] testimony at the hearing is recently fabricated . . . and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."  An attack on a witness's general credibility does not make all the witness's prior statements admissible under section 791(b).  (*Ervine,* 47 Cal.4th at p. 780.)

15

We review a trial court's ruling excluding testimony for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 197.)

3.

The trial court did not abuse its discretion in declining to allow Ayala to introduce the denials and alternate explanations he previously conveyed to an investigator. The prosecutor's expressions of disbelief and incredulity regarding Ayala's clear recollection of events from years or decades before trial amount to the kind of general credibility challenge that *Ervine* cautioned does not allow admission of otherwise hearsay statements under section 791(b). (*Ervine,* 47 Cal.4th at p. 780.)

Ayala acknowledges the prosecutor did not explicitly accuse him of fabricating his trial testimony but contends "recent fabrication may be inferred when it is shown that a witness did not speak about an important matter at a time when it would have been natural for him to do so," permitting the witness to be rehabilitated by a prior consistent statement. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1066 [cleaned up].)

Ayala appears to contend his entire interview with Nelson should have been admitted on this theory. But he identifies just one detail the prosecutor challenged him for providing at trial but omitting from his 2017 interview: Jane Doe 2 was wearing tights in the car. This hardly amounts to silence on an ""important matter""—like whether the crime occurred at all—as *Lopez* contemplates. (*Lopez,* 56 Cal.4th at p. 1066.)

Ayala identifies in his brief another "prior consistent statement[ ]" he should have been allowed to introduce: He learned English by watching television in English. Although this statement might have allowed Ayala to indirectly rebut the prosecution's argument Ayala was at Jane Doe 1's house often, since that was where he watched television in Spanish, the proffered

16

statement is not consistent with Ayala's trial testimony that he went to Jane Doe 1's house only once or twice a year. Section 791(b) does not permit introduction of a prior consistent statement that is not actually consistent. (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 317.)

Regardless, the trial court could reasonably infer Ayala had the same motive to lie when he made his prior statements to the investigator; thus, the statements did not satisfy the requirement that they be made prior to the time the motive to fabricate testimony arose. (See *People v. Hitchings* (1997) 59 Cal.App.4th 915, 921.)

Ayala was permitted to present his defense, and he did so, through cross-examination of the prosecution witnesses and by taking the stand in his defense. Because there was no error, there was no federal due process violation. (*People v. Kraft* (2000) 23 Cal.4th 978, 1035-1036.)

D.

Finally, Ayala contends he is entitled to presentence credits under Penal Code section 2933.1 because the conduct underlying counts 1 through 9 occurred prior to amendments to section 667.61. The People concede this point, and we accept the concession.

Section 667.61(i) previously awarded up to 15 percent of actual credit as conduct credit. An amendment effective 2006 removed that conduct credit for certain offenses. (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 267-268.) At sentencing, the court awarded Ayala zero presentence conduct credits. This was error.

A defendant's entitlement to presentence conduct credits is measured by the date of the offense. (*People v. Ramirez* (2014) 224 Cal.App.4th 1078, 1086.) Ayala was convicted of nine offenses qualifying for 15 percent conduct credit (counts 1 through 9, occurring in 2004) and two offenses qualifying for

17

no conduct credit (counts 10 & 11, occurring in 2017).  Since a period of presentence confinement is indivisibly attributable to all the offenses (*In re Reeves* (2005) 35 Cal.4th 765, 775), we agree Ayala should be awarded conduct credit at the same rate for all counts.

### III.

We reverse the convictions on counts 5, 6, and 8.  At resentencing, the trial court is directed to apply 15 percent conduct credit to Ayala's presentence confinement consistent with Penal Code section 2933.1.  We otherwise affirm.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


RUBIN, J.

18