[No. C042456. Third Dist. Dec. 2, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY SONG, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through VI.

## COUNSEL

Jerry Song, in pro. per.; and Raymond J. Simmons for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRISON, Acting P. J.**—Defendant was convicted by jury of kidnapping (Pen. Code, § 207, subd. (a)); sexual penetration by foreign object (Pen. Code, § 289, subd. (a)(1)) with a "one strike" kidnapping allegation (Pen. Code, § 667.61, subds. (a), (c)(5), & (d)(2)); and sexual battery by restraint (Pen. Code, § 243.4, subd. (a)). Sentenced to 25 years to life in prison plus a four-year determinate term, defendant appeals. He contends (1) there was prejudicial *Aranda-Bruton* error (*Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; *People v. Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]; (2) it was error to exclude evidence of the victim's prior relationship with defendant; (3) the jury instructions given on the Penal Code section 667.61, subdivision (d)(2) special allegation were deficient; (4) the jury unanimity instruction was required for the kidnapping charge; (5) there was prosecutorial misconduct; and (6) ineffective assistance of counsel.

 The admission of statements by defendant's codefendants to the police was error under *Aranda-Bruton* and the recent case of *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354]. We find the erroneous admission was harmless beyond a reasonable doubt as to the sex offenses, but not as to the kidnapping charge and special allegation. The kidnapping and the "one strike" kidnapping allegation convictions are reversed and the matter remanded for resentencing.

## FACTS

On the evening of January 15, 2002, the victim's brother answered the door when defendant knocked. Defendant wanted to talk to the victim. There were four cars outside. The victim was getting ready for bed; she was wearing a T-shirt and shorts and no shoes.

The brother called the victim to the door. When she came to the door defendant asked for money and said he wanted to go out with her. He put her in a headlock. She got him off of her, but defendant held her hand and dragged her to the car as she tried to pull away. The brother saw defendant grab the victim's head and the victim try to push defendant off. When they got to the car, Tony Vang (Vang) grabbed the victim's legs and helped defendant put her into the car.

There were four other people in the car. Thao Vu was driving and someone known as Africa was in the passenger seat. The victim was in the middle of the rear seat with Meng Vang on her left and defendant on her right.

The car drove to a fish hatchery, then around downtown. The victim said she wanted to go home and the car went back to her house. When it got there, the driver or someone asked if defendant wanted the victim to go home; defendant said no, he wanted to spend more time with the victim and the car took off. After five or 10 minutes, the car stopped with the other cars around. Defendant twisted the victim's head so everyone in the other cars could see her. The car then proceeded to Table Mountain.

As they were going up to Table Mountain, the car stopped and Meng Vang got out and Cheng Lor took his place. Defendant kissed the victim and put his hand on her thigh and began rubbing. He tried to put his finger in her vagina and tried to put her hand on his penis. The victim pulled away. Defendant touched her breast under her clothes.

When they reached Table Mountain everyone got out. Defendant tried to kiss the victim, make her touch him, and put his finger in her. The victim noticed that Vang had arrived. Defendant had an erection; the victim both felt and saw it. She walked away from defendant and said her feet hurt because she had no shoes. He picked her up and moved her a few feet away from his friends. He tried to kiss her and put his finger in her. The victim pulled away and told him to stop; defendant put his finger in the victim's vagina six or seven times. She tried to stop him. Vang came over and said the victim had a "nice butt."

On the way back down from the mountain, Lor "started kissing on" the victim; he kissed her two or three times on the cheek. Lor stopped when she told him no.

The men in the car decided to go to McDonald's; defendant agreed if the victim could get him some free food he would take her home. On the way to McDonald's Africa was dropped off and defendant moved into the passenger seat. When they got to McDonald's the victim went inside and saw a friend. She started crying and the friend took her to the office where the victim called her mother.

Defendant was charged with kidnapping, penetration with a foreign object with a "one strike" kidnapping allegation, and sexual battery by restraint. Lor was charged with sexual battery by restraint and kidnapping. Vang was charged with kidnapping.

Before trial the court granted the People's motion to exclude the victim's sexual history under Evidence Code section 1103, subdivision (c)(1), without objection from any of the defendants. The defense raised the possibility of *Aranda-Bruton* problems in Vang's statements to the police. The trial court cautioned the prosecutor to stay away from a statement by one defendant that may inculpate another.

On direct examination the victim testified she had never gone out on a date or done anything socially with defendant. On further questioning she admitted she "dated" him a couple of days; the date was a phone call. She then said she had once gone to the park with defendant and had kissed him. When asked if she did anything else with defendant, the victim responded: "I don't want to answer that question." She said the last time she did anything with defendant was one year before the incident.

After the victim's direct examination, counsel for Lor raised the issue of the victim's prior relationship with defendant, "which is news to us because it's contrary to what's in the police report." Counsel noted the trial court's prior ruling prohibited questioning about that relationship as to the issue of consent. Defendant's counsel suggested the prosecution may have opened the door; the trial court disagreed. The court indicated it would review the issue during recess.

On cross-examination, the victim testified that when defendant came to her door, she told him she could not go out because her mom would not let her. The defense asked the victim whether at Table Mountain defendant asked her to "do it"—have sexual intercourse—with him. She could not remember. The defense asked if she told defendant she could not do it with him because she was under 18. She denied that and insisted she did not want to have sex with defendant. She admitted she told an officer that she had told defendant she could not do it because she was underage, but explained that did not mean she would have done it if she were over 18, only that she was telling

defendant not to do anything because he would get in big trouble. Defendant told her he loved her and that he would marry her if she got in trouble. The victim scoffed at this notion of love.

The officer who interviewed the victim after the assault testified she said that while at Table Mountain defendant wanted to walk to a darker place so they could be alone, but she refused. Defendant asked her to "do it with him," which she understood to mean to have sexual intercourse. The victim told defendant she could not have sex with him because she was underage. Defendant told her it was okay because he loved her. Defendant told her that if she got in trouble he would marry her. Defendant attempted to hug her.

Officer John Nickelson testified he spoke with Vang, Lor and defendant and videotaped the interviews. After advising Vang of his constitutional rights, Nickelson confronted him with the incident and the facts and Vang said he did not know anything about the incident. After Vang was arrested he told Officer Nickelson he was driving by the victim's house and saw many vehicles. He thought there might be a party and stopped. He saw defendant and the victim; defendant was trying to push the victim into the car. Vang thought the victim's legs might get hurt so he lifted them up while putting the victim into the car.

Vang also told Officer Nickelson he did not think the victim wanted to be in the car or at Table Mountain. He thought defendant and the victim had a dating relationship. Vang lied at first about the incident because he was embarrassed.

After Officer Nickelson advised Lor of his constitutional rights, Lor would not tell him who was the driver of the car or how he got to the victim's house. Lor claimed he did not know how the victim got in the car. He knew the victim wanted to go home; she said so en route to Table Mountain. Lor denied he kissed or touched her. Officer Nickelson asked Lor if the victim had been sexually assaulted and Lor said there was no intercourse. The victim did not want to be in the car; she told defendant she wanted to go home. Lor thought defendant and the victim had been together.

Officer Nickelson read defendant his rights and confronted him with the allegations. Defendant said he did not know anything about them. He said the victim was not his girlfriend.[1]

---

[1] The prosecution argued the jury could consider each of defendant's evasive replies or silence as an adoptive admission that the accusation was true. The jury was instructed on adoptive admissions with the language of CALJIC No. 2.71.5. There was no objection to this argument or instruction below or on appeal. Since a defendant has a right to remain silent when under arrest without an express claim of his privilege against self-incrimination, no

The defense objected to Vang's testimony about defendant pushing the victim into the car as a violation of the *Aranda-Bruton* rule. The trial court asked for briefing on the issue, which only defendant provided. The trial court ruled the prosecution was not allowed to present statements by Lor or Song through Vang's testimony. Vang's observations of defendant were inculpatory and not admissible. Defense counsel complained these statements were already in and requested a mistrial. The trial court denied the motion. Counsel for Lor asked to strike Officer Nickelson's testimony as to what Vang said the other defendants were doing. The trial court agreed to admonish the jury.[2]

Counsel for Lor also asked to revisit the court's ruling under Evidence Code section 1103, subdivision (c). He argued the code section did not apply to Lor because he was not charged with any of the enumerated sex offenses. Further, there was an exception for the victim's sexual history with the defendant. The Evidence Code allowed admission of the victim's sexual history with defendant to determine if the conduct was consensual. Vang wanted to admit testimony of Bonnie Thao who would testify she had known defendant all his life and the victim since seventh grade. The victim had told her she liked defendant, they had been together for awhile, and they had been together sexually. The victim would not admit it because she had a boyfriend. The defense argued this evidence went to credibility as the victim claimed she dated defendant for only two days. The prosecution argued it was irrelevant because it occurred in the past. The trial court denied the request to introduce this evidence. The court confirmed its earlier ruling under Evidence Code section 1103; all evidence of the victim's sexual history was excluded.

Defendant's father testified the victim had twice been to his house asking for defendant and left with defendant. The last time this occurred was in February 2000.

The jury acquitted Vang and Lor, but convicted defendant of all charges.

## DISCUSSION

### I

In *People v. Aranda, supra*, 63 Cal.2d 518, 530–531 (hereafter *Aranda*), the California Supreme Court held that when the prosecution seeks

adverse inference may be drawn from his silence. (*People v. Cockrell* (1965) 63 Cal.2d 659, 669–670 [47 Cal.Rptr. 788, 408 P.2d 116].)

[2] The trial court admonished the jury: "I am going to admonish you all references that were given by Officer Nickelson to Mr. Vang as to what Mr. Song or what Mr. Lor said are stricken." The court later instructed the jury: "Evidence has been received of a statement made by a defendant after his arrest. Do not consider the evidence of this statement against the other defendants."

to introduce an extrajudicial statement of one defendant that implicates a codefendant, the trial court must adopt one of three procedures: (1) in a joint trial, effectively delete direct and indirect identifications of codefendants; (2) grant a severance of trials; or (3) if severance has been denied and effective deletion is not possible, exclude the statement. In the absence of a holding by the United States Supreme Court, the *Aranda* court declared these rules were not constitutionally compelled, but judicially declared to implement the provisions for joint and separate trials of Penal Code section 1098. (63 Cal.2d at p. 530.)

A decision by the United States Supreme Court came three years later. In *Bruton v. United States, supra,* 391 U.S. 123 [20 L.Ed.2d 476] (hereafter *Bruton*), the high court held that introduction of an incriminating extrajudicial statement by a codefendant violates the defendant's right to cross-examination, even if the jury is instructed to disregard the statement in determining the defendant's guilt or innocence.

*Aranda, supra,* 63 Cal.2d 518, is now recognized as a constitutionally based doctrine, at least in part. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1045 [5 Cal.Rptr.2d 230, 824 P.2d 1277].) "To the extent *Aranda* corresponds to the *Bruton* rule, it was not abrogated by the 1982 adoption of Proposition 8 (specifically section 28, subdivision (d) of article I of the California Constitution, the 'Truth-in-Evidence' provision.)" (*Id.* at p. 1045, fn. 6.) *Aranda-Bruton* error is not reversible per se; because it implicates a constitutional right, it is scrutinized under the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Brown v. United States* (1973) 411 U.S. 223, 231–232 [36 L.Ed.2d 208, 215, 93 S.Ct. 1565]; *People v. Anderson* (1987) 43 Cal.3d 1104, 1128 [240 Cal.Rptr. 585, 742 P.2d 1306].)

Despite the trial court's explicit warning to avoid eliciting a statement from one defendant that inculpated another, the prosecutor did just that. Officer Nickelson testified Vang told him he saw defendant force the victim into the car. Defendant contends, and the Attorney General properly concedes, this was *Aranda-Bruton* error. They disagree on whether it was prejudicial. Defendant contends it was prejudicial because it corroborated and bolstered the credibility of the victim. The Attorney General contends it was not because Vang's observation was neutral, supporting defendant's theory that the incident was only horseplay, as well as the prosecution's theory that it was kidnapping.

Before determining whether the admission of Vang's statement was harmless, we requested supplemental briefing on whether it was error to admit all of the statements of Vang and Lor, not just those that implicated

defendant, under the recent case *Crawford v. Washington, supra,* 541 U.S. 36 [158 L.Ed.2d 177]. In *Crawford,* the United States Supreme Court held out-of-court statements that are testimonial must be excluded under the confrontation clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the declarant. (*Id.* at p. 68 [158 L.Ed.2d at p. 203].) A statement elicited during a police interrogation is testimonial. (*Ibid.*) ■ A new rule for the conduct of criminal prosecutions is applied retroactively to all cases pending on appeal or not yet final, even if the new rule presents a "clear break" with the past. (*Griffith v. Kentucky* (1987) 479 U.S. 314, 328 [93 L.Ed.2d 649, 661, 107 S.Ct. 708].) ■ Admission of an extrajudicial statement in violation of defendant's rights under the confrontation clause is subject to *Chapman* harmless error analysis. (*Lilly v. Virginia* (1999) 527 U.S. 116, 139–140 [144 L.Ed.2d 117, 136, 119 S.Ct. 1887].)

The Attorney General declined to address whether there was *Crawford* error. Instead, he argues any error was harmless beyond a reasonable doubt. He contends the victim's story was compelling and given without any motive to lie; it provided overwhelming evidence of defendant's guilt. In the Attorney General's view the statements of Vang and Lor were not crucial pieces of evidence.

Defendant disagrees, contending the admission of the statements of Vang and Lor was prejudicial error. He asserts the statements served the crucial role of corroborating the victim's testimony, corroboration that was needed because the victim's credibility was "shaky."

Had the statements by Vang and Lor been admitted against defendant, that admission would be *Crawford* error. Here, however, the trial court instructed that statements by any defendant after his arrest were not to be considered against any other defendant. The Sixth Amendment's confrontation clause provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" (U.S. Const., 6th Amend.) The question is whether the limiting instruction cured any confrontation clause problem because it mandated that Vang and Lor were not witnesses against defendant.

■ A similar admonition is insufficient where the statement is a confession or admission that directly incriminates defendant. A limiting instruction does not cure *Aranda-Bruton* error because courts have repudiated the premise that it is reasonably possible for a jury to follow an instruction to disregard evidence that expressly incriminates the defendant. (*Bruton, supra,* 391 U.S. at p. 126 [20 L.Ed.2d at p. 479].) A limiting instruction is not a substitute for defendant's constitutional right of cross-examination. (*Id.* at

p. 137.) As Justice Traynor observed in *Aranda, supra,* 63 Cal.2d 518, 529, a joint trial poses a particular difficulty in following the command of a limiting instruction. "A jury cannot 'segregate evidence into separate intellectual boxes.' [Citation.] It cannot determine that a confession is true insofar as it admits that A has committed criminal acts with B and at the same time effectively ignore the inevitable conclusion that B has committed those same criminal acts with A."

■ The scope of *Bruton, supra,* 391 U.S. 123 [20 L.Ed.2d 476], was limited in *Richardson v. Marsh* (1987) 481 U.S. 200 [95 L.Ed.2d 176, 107 S.Ct. 1702] (*Richardson*). The high court held "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." (*Id.* at p. 211, fn. omitted.) The court distinguished the redacted confession from the confession at issue in *Bruton* because the redacted confession was not incriminating on its face, but only when linked to other evidence. (*Richardson, supra,* 481 U.S. at p. 208.) Express incrimination is more vivid than inferential incrimination and more difficult to thrust out of the mind. While the express incrimination of the confession in *Bruton* justified the belief the jury will likely disobey the instruction not to consider the evidence, there is no overwhelming probability the jury will not obey the limiting instruction to disregard the confession in assessing defendant's guilt when the confession incriminates only by inference. (*Richardson, supra,* 481 U.S. at p. 208.)

In *Gray v. Maryland* (1998) 523 U.S. 185 [140 L.Ed.2d 294, 118 S.Ct. 1151], the court again considered the efficacy of a limiting instruction. The court found a confession that was redacted to replace defendant's name with an obvious indication of deletion, such as a blank space, the word "deleted," or a symbol, fell within the *Bruton* rule. (*Gray v. Maryland, supra,* at p. 192.) Whether *Bruton, supra,* 391 U.S. 123 [20 L.Ed.2d 476], or *Richardson, supra,* 481 U.S. 200 [95 L.Ed.2d 176], applied depended not on whether an inference was required to incriminate defendant, but on the type of inference required. Where the confession made a direct reference to a perpetrator other than the speaker and the jury could infer immediately that perpetrator was defendant, without considering other evidence, admission of the confession was *Bruton* error despite the limiting instruction. (*Gray v. Maryland, supra,* at p. 196.)

Addressing the *Crawford* issue for the first time in a petition for rehearing, the Attorney General contends there was no error in admitting the statements of Vang and Lor because they did not expressly incriminate defendant. Relying on *Richardson, supra,* 481 U.S. 200 [95 L.Ed.2d 176], the Attorney

General argues the limiting instruction not to consider each defendant's statements against the other defendants was sufficient to cure any confrontation problem.

If only those statements of Vang and Lor that did not directly incriminate defendant had been admitted at trial, we would agree it is reasonable to presume the jury followed the limiting instruction and defendant's rights to confrontation were not implicated. That, however, is not the situation here. As the *Bruton* court recognized, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (*Bruton, supra,* 391 U.S. 123, 135 [20 L.Ed.2d 476, 485].) One of those contexts is present here. Once Vang's statement directly incriminating defendant—that defendant forced the victim into the car—was admitted, under *Aranda, supra,* 63 Cal.2d 518, and *Bruton,* we presume the jury did not or could not disregard that evidence in assessing defendant's guilt. Having presumed the jury disobeyed the court's instruction as to the most incriminating evidence, it is unreasonable to presume the jury then scrupulously followed the instruction as to other evidence from the same source.

The statements of Vang and Lor corroborated the victim's testimony on a key point, whether she went with defendant out of force or fear. We believe it unlikely that the jury would be able to apply Vang and Lor's statements that defendant forced the victim into the car, that she expressed her desire to go home, and that she did not want to be in the car—statements that corroborated the victim's testimony and each other—only in determining the culpability of Vang and Lor, but not that of defendant.

We conclude that in this case, where there is both *Aranda-Bruton* error and *Crawford* error, the limiting instruction is insufficient to eliminate *Crawford* error. A limiting instruction is not always an adequate substitute for a defendant's constitutional right of cross-examination. The admission of the statements of Vang and Lor, in addition to the conceded *Aranda-Bruton* error, was *Crawford* error.

 Under the *Chapman* test, *Aranda-Bruton* error is harmless where the properly admitted evidence against defendant is overwhelming and the improperly admitted evidence is merely cumulative. (*Harrington v. California* (1969) 395 U.S. 250, 254 [23 L.Ed.2d 284, 287, 89 S.Ct. 1726].) To find the error harmless we must find beyond a reasonable doubt that it did not contribute to the verdict, that it was unimportant in relation to everything else the jury considered on the issue in question. (*Yates v. Evatt* (1991) 500 U.S. 391, 403 [114 L.Ed.2d 432, 448, 111 S.Ct. 1884], disapproved on another

point in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. 4 [116 L.Ed.2d 385, 399, 112 S.Ct. 475].) We employ the same analysis for *Crawford* error since the *Chapman* test also applies.

The Attorney General contends both errors were harmless because the victim's testimony was so compelling. The jury, however, did not accept the prosecution's case entirely. It acquitted Vang and Lor despite the victim's incriminating testimony. Instead, we look to the individual counts against defendant and the strength of the prosecution's case as to each.

The prosecution's case against defendant on the sex offenses was strong. Defendant did not deny the sex offenses took place or claim that the victim consented. His defense was that his actions were inappropriate but not criminal. The statements at issue did not speak much to the sex offenses. The only reference was Lor's response, to a question about sexual assault, that there was no intercourse. As to the sex offenses, we find the admission of the statements of Vang and Lor was harmless beyond a reasonable doubt.

We reach a different conclusion as to the kidnapping charge and allegation. Here, the defense attacked the victim's credibility, focusing on differences between her story on direct examination and that on cross-examination. The improperly admitted statements related to the central issue of the kidnapping, whether the victim went voluntarily with defendant. Vang said defendant forced the victim into the car. Both Vang and Lor said they knew the victim did not want to be there even though both believed the victim and defendant had a relationship. These statements were not merely cumulative but strongly corroborated the victim's testimony on the key point of whether the victim left with defendant willingly, testimony that was challenged on cross-examination when she testified she told defendant she could not go only because her mother would not let her. The error in admitting the statements was compounded by the error, discussed below, in excluding evidence of the victim's prior relationship with defendant. In these circumstances, we cannot find the error in admitting the statements of Vang and Lor was harmless beyond a reasonable doubt as to the kidnapping.

Although we reverse the kidnapping and "one strike" allegation, we address defendant's remaining contentions for guidance to the trial court in case of a retrial.

II–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 973.

## DISPOSITION

The convictions for kidnapping and the "one strike" kidnapping allegation are reversed. The matter is remanded for resentencing.

Hull, J., and Butz, J., concurred.